```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

**Ericson Benjamin**               :
                                   :
                                   :
**v.**                             :     3:03cv1172 (JBA)
                                   :
**Bureau of Customs**              :

**Ruling on Petition for Writ of Habeas Corpus [Doc. # 1]**

Petitioner Ericson Benjamin, a native and citizen of Trindad/Tobego, challenges his order of deportation on grounds that his conviction for first degree manslaughter under Conn. Gen. Stat. § 53a-55(a)(1) is not an aggravated felony within the meaning of the Immigration and Nationality Act, and that the Immigration Judge erred in finding him ineligible for 212(c) relief.

Benjamin was deportable under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony, which is defined to include a conviction for a "crime of violence . . . for which the term of imprisonment is at least one year."  See 8 U.S.C. § 1101(a)(43)(F).  A "crime of violence" is defined in 18 U.S.C. § 16 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The statute under which Benjamin was convicted provides:

1

> (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . .

Conn. Gen. Stat. § 53a-55(a)(1).  Manslaughter in the first degree is a class B felony, § 53a-55(b), and therefore a determination of whether such an offense is a "crime of violence" is governed by 18 U.S.C. § 16(b).

The Second Circuit applies a "categorical approach" to determining whether an offense is a crime of violence within the meaning of section 16(b), which looks "to the generic elements of the statutory offense."  Jobson v. Ashcroft, 326 F.3d 367, 372 (2d Cir. 2003).  "Only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant."  Dalton v. Ashcroft, 257 F.3d 200, 203 (2d Cir. 2001).  The question here, therefore, is whether first degree manslaughter under Connecticut law involves "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16(b).  The Court concludes that it does.

In Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), the Second Circuit explained the differences between § 16(a) and § 16(b):

> Through § 16(b), Congress sought to classify as crimes of violence felonies that, by their nature, involve a substantial risk that physical force against the person or property of another may be used. It did not require that felonies have as an element of the offense the use of force.

> But when Congress considered which misdemeanors should be deemed crimes of violence [under § 16(a)], and thus aggravated felonies under the INA, it chose a materially different definition. Namely, as discussed above, Congress elected to reach only those misdemeanors that have as an element the use of force against the person or property of another. Through this structure, Congress chose to apply a less restrictive definition of crime of violence to felonies than to misdemeanors . . . .

Id. at 196-97.

Thus, in Chrzanoski, the Second Circuit held that misdemeanor third degree assault under Conn. Gen. Stat. § 53a-61 was not a crime of violence under § 16(a), because while the offense required the intent to cause physical injury, the use of force was not an element of the offense. Chrzanoski, 327 F.3d at 196 ("[H]uman experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient.").

In Jobson, the Second Circuit held that the felony of second degree manslaughter under N.Y.P.L. § 125.15(1), for "recklessly caus[ing] the death of another person," was not a crime of violence under section 16(b) because the elements of the New York offense did not require the defendant to risk using force intentionally in committing the offense.  Id. at 374.  As the Second Circuit concluded,  "(1) [S]ection 16(b) requires that an offense inherently pose a substantial risk that a defendant will use physical force; and (2) section 16(b) contemplates risk of an

3

intentional use of force." Id. (emphasis in original); see also id. at 373 ("the verb 'use' in section 16(b), particularly when modified by the phrase 'in the course of committing the offense,' suggest that section 16(b) 'contemplates only intentional conduct' and 'refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force.'")(quoting Dalton, 257 F.3d at 206-08); Leocal v. Ashcroft, 125 S.Ct. 377, 383 (2004) ([W]hile § 16(b) is broader than § 16(a) in the sense that physical force need not actually be applied, it . . . require[s] a higher mens rea than [] merely accidental or negligent conduct. . . ."). Under the New York second degree manslaughter statute, however, the Court found that only "passive conduct or omissions alone are sufficient for conviction" such as "failure to feed a child," or "failure to provide medical care to a child beaten by someone else." Id. at 373.  Moreover, "a defendant who is convicted of second-degree manslaughter, like other offenses of pure recklessness, may lack any intent, desire, or willingness to use force or cause harm at all."  Id. at 374 (citation and internal quotation marks omitted).

In contrast, the "classic example" of an offense satisfying the definition of "crime of violence" under § 16(b) is burglary. Leocal, 125 S.Ct. at  383.  "A burglary would be covered under § 16(b) not because the offense can be committed in a generally

4

reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime." Id.; see also Jobson, 326 F.3d at 373 (noting that "burglary is a crime of violence even though no force is used in a particular instance, because 'a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar'") (quoting United States v. Parson, 955 F.2d 858, 866 (3d Cir. 1992)). Relatedly, the Second Circuit has concluded that "unlawful imprisonment in the first degree" under New York law, which covers the restraint of another person "under circumstances which expose the latter to a risk of serious physical injury," is a crime of violence under § 16(b), reasoning:

> Positing a hypothetical manner in which the unlawful imprisonment of a competent adult could be accomplished by deception and without the use of force . . . does not necessarily exclude the unlawful imprisonment statute from the scope of § 16— our inquiry under § 16(b) is broader and more flexible . . . We thus concluded that whether accomplished by force, intimidation, or deception, the unlawful imprisonment of a competent adult under New York law always involves either the use of risk of force, and will always be a crime of violence pursuant to § 16.

Dickson v. Ashcroft, 346 F.3d 44, 51 (2d Cir. 2003).

Unlike the misdemeanor offense in Chrzanoski and the kind of passive conduct criminalized by the New York statute at issue in Jobson, Conn. Gen. Stat. § 53-55(a)(1), is a felony that has as an element intent to cause serious physical injury.  While the statute does not require the use of force, conduct carried out

5

with the intent to cause serious physical injury carries with it a substantial <u>risk</u> that force will be used to accomplish the intended goal.  If, for example, less forceful means fail to accomplish the serious physical injury intended, there is a risk that the perpetrator of the crime, like a burglar encountering the occupants of the home or a person unlawfully imprisoning another adult, would resort to force to complete the crime.

Petitioner also challenges the Immigration Judge's finding that he was ineligible for § 212(c) relief as an alien who had been convicted of an aggravated felony and had served a term of imprisonment of at least 5 years, arguing that he could have avoided the five year bar had his deportation proceedings been expedited.  Because petitioner had served more than five years in prison at the time the IJ rendered his decision on removal, the IJ properly concluded that he was ineligible for § 212(c) relief. The relevant time period for determining the availability of the waiver, however, is the time served under the sentence, not the timing of the deportation proceedings.  <u>See</u> <u>Giusto v. I.N.S.</u>, 9 F.3d 8, 10 (2d Cir. 1993).  As the Second Circuit explained:

> The INS may well, with respect to an alien sentenced to five years or more, initiate deportation proceedings prior to his service of five years if necessary to comply with the statutory requirement that such proceedings be commenced expeditiously, in order to minimize the time the alien must remain in custody between the completion of his sentence and the resolution of the deportation proceedings. Institution of deportation proceedings prior to the end of such an alien's prison term, however, is not designed to shorten the term of incarceration but only to facilitate deportation

>  upon the completion of the alien's sentence. Thus, if the sentence is five years or longer, the mere fact that the INS initiated deportation proceedings early would not make the waiver available.

Id. (citations and internal quotation marks omitted).

Benjamin was sentenced on August 31, 1995 to 20 years imprisonment, with an estimated release date of between August 2004 and March 2005.  See Notice to Appear [Doc. # 5, Ex. A]; Public Information Disclosure [Doc. # 5, Ex. B].  His term of imprisonment, therefore, was clearly in excess of five years, and the IJ's decision finding him ineligible for 212(c) accordingly was not in error.  See also Buitrago-Cuesta v. Immigration and Naturalization Service, 7 F.3d 291, 296 (2d Cir. 1993) (holding that five years imprisonment bar to availability of 212(c) waiver was properly calculated as of the date of the Immigration Judge's decision.).

For the foregoing reasons, Benjamin's Petition for Writ of Habeas Corpus [Doc. # 1] is DENIED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 18th day of August, 2005.**

7